McDONALD, J.
bin this appeal, a limited liability company challenges two judgments dismissing its claims for declaratory relief and damages against two state entities insofar as those claims relate to incentives to which the company claims entitlement under the Louisiana Quality Jobs Program Act (LQJPA), LSA-R.S. 51:245Í et seq. For the following reasons, we affirm the first judgment and dismiss the appeal from the second judgment.
FACTUAL AND PROCEDURAL ^BACKGROUND
Blake International U.S.A. Rigs, L.L.C., an offshore platform rig provider headquartered in Houma, Louisiana, was formed in early 2008. In May 2008, Blake International purchased ten drilling rigs and related equipment from Pride Offshore, Inc. A separate entity, Blake International Real Estate, LLC, purchased Pride’s facility located in Houma. While the sale negotiations were pending, Pride’s *172 Regional Vice President, Chris Johnston, sent a memo to Pride’s platform rig employees informing them that they would be laid off as a result of the sale and encouraging them to “consider the offer of employment extended by the Blake organization” as described in attachments to his memo. Also during.the sale, negotiations, Blake International sent an advance notification to the Louisiana . Department of Economic Development (LDED) of its intent to seek quality job rebates under the LQJPA. After the sale was completed, Blake International hired approximately 170 former Pride employees, all of whom had been laid off by Pride.
In late July 2009, Blake International submitted a LQJPA application to LDED seeking rebates for new employees it hired, including certain former Pride employees. In an email sent in late August 2009, Frank Favaloro, LDED’s program administrator for the Quality Jobs Act Program, explained to Kevin Pellegrin, Blake International’s recruiter, that the Blake International positions filled by former Pride employees would not qualify as “new direct jobs” as defined by the LQJPA. In late October 2009, Blake International resubmitted its application to LDED and asked to have the matter placed on the agenda of' an upcoming meeting of the Louisiana Board of Commerce and ^Industry (LBCI), the entity with which employers contract for LQJPA benefits.[1] See LSA-R.S. 515464(A)
In May 2010, Blake International filed a petition against the State; directly and through LDED, seeking: (1) a declaratory judgment that it was entitled to the full rebates and benefits of the LQJPA with respect to all new direct jobs created, including all hires of former Pride employees; (2) damages; and (3) attorney fees. In June 2010, LBCI approved Blake International’s application, and contract negotiations between Blake International and LDED began.[2]* It is undisputed, however, that a contract for LQJPA benefits has not been executed.
Following an amended petition, a transfer of venuej and other filings and rulings, in June 2013, Blake International filed a motion for partial summary judgment on its declaratory judgment claim. The State responded with a cross motion for summary judgment; alternatively, an exception pleading the objection of ho right of action; and, an opposition to Blake International’s motion. After its motion was denied, Blake International filed a second amended petition, adding LBCI as a defendant, and alleging that, after the initial LQJPA contract negotiations, LDED refused to respond to Blake International’s inquiries for approximately two years. Blake International alleges that, during this time, LDED sought and obtained changes to the rules applicable to the LQJPA program, which changes were detrimental to Blake International. Blake International asked that, among other relief, the court order LDED and LBCI to facilitate and execute a LQJPA contract with Blake International and that the contract comply with the version of the rules in *173 effect when Blake International filed its. application in 2009.
The State, through LDED and LBCI,-filed multiple exceptions to and answered the second' amended petition. Following a hearing on the State’s earlier-filed cross motion for summary judgment, the trial court signed a judgment on February 25, 2014] 4(1) granting that motion; (2) dismissing Blake International’s claims “for rebates and damages pursuant to [the LQJPA]” without prejudice; but, (3) mot dismissing “other claims” asserted by Blake International in its second amended petition. The State then filed another motion for summary judgment seeking dismissal of Blake International’s remaining claims, and Blake International filed an opposition. Following a hearing, the trial court signed a second judgment, on August 12, 2014, granting the State’s motion and dismissing Blake International’s remaining claims without prejudice. On September 19, 2014, Blake International filed a notice into the record that it had signed and delivered a LQJPA contract to LDED.[3]
Blake International now appeals from the two adverse judgments, contending the trial court erred in granting the State’s motions for summary judgment, in dismissing Blake International’s claims, and in determining that it did not have jurisdiction and/or power to order, and in not ordering, LDED and LBCI to comply with the LQJPA and execute the contract signed by Blake International.
SUMMARY JUDGMENT
Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Clark v. J-H-J, Inc., 13-Q432 (La.App. 1 Cir. 11/1/13), 136 So.3d 815, 816, writ denied, 13-2780 (La.2/14/14), 132 So.3d 964. Summary judgment is appropriate if the. pleadings* depositions, answers to interrogatories, admissions, together with the affidavits, if any, admitted for purposes of the-motion for summary judgment, show that there is no genuine, issue as to material fact, and that the movant ⅛.entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2); Tomaso v. Home Depot, U.S.A., Inc., 14-1467 (La.App. 1 Cir., 6/5/15), 174 So.3d 679, 681. The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require that he negate all essential elements of the adverse party’s .claim, action, or defense. Instead, |sthe movant must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be .able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this.burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. See LSA-C.C.P. art. 966(C)(2); Clark, 136 So.3d at 817. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive, law applicable to this case. Tomaso, 174 So.3d 679, 680:
LOUISIANA QUALITY JOBS PROGRAM ACT
The LQJPA was enacted in 1995 to provide ’appropriate incentives to support *174 employers who make significant contributions to the development of Louisiana’s economy. LSA-R.S. 51:2452(A)(1). Under the LQJPA, an “employer” is defined as- a legal person who executes a contract with the department and who offers a basic health' benefits plan to individuals it employs in new direct jobs[4] in Louisiana. LSA-R.S. 51:2453(2). The amount of the incentives provided or made available to employers shall be directly related to the new direct jobs created as a result of the employer locating or expanding existing operations in Louisiana. LSA-R.S. 51:2452(A)(2). To receive a contract for a LQJPA rebate, an employer shall apply to LDED, and LDED shall determine if the applicant is qualified to receive rebates. LSA-R.S. 51:2455(D)(1), (F). Thereafter, after consultation with the secretaries of the Louisiana Workforce Commission and the Department of Revenue, and with the approval of the governor, LBCI may enter into a contract with an employer complying with the provisions of the LQJPA for a period up to- five years. LSA-R.S. 51:2454(A). 'An employer who has entered into a contract may receive a rebate for the taxable periods specified in the contract. LSA-R.S. 51:2455(A). The rebate is determined by multiplying the “benefit rate” (a percentage calculated on |fithe number of- new direct jobs paying a threshold amount created by the employer and the value of the health care benefits paid or offered by the employer) by the employer’s “gross payroll” (the wages for the new direct jobs created). LSA-R.S. 51:2453(1), (3), (4); LSA-R.S. 51:2455(A). Having set forth this basic summary of the LQJPA, we now turn to issues raised on appeal.
DISMISSAL OF CLAIMS FOR LQJPA REBATES. AND DAMAGES
In the February 25, 2014 judgment, the trial court granted summary judgment and dismissed Blake International’s claims for LQJPA rebates and for damages against LDED without prejudice. As explained by the trial court in its oral reasons for judgment, the LQJPA’s statutory scheme very clearly requires that an entity may seek rebates only after a LQJPA contract has been executed. In fact, the definition of “employer” under the LQJPA is “a legal person who executes a contract with the [LBCI.] ” See LSA-R.S. 51:2453(2).[5] The execution of a LQJPA contract only occurs, however, if the entity files an application (LSA-R.S.51:2455(D)(1)); if LDED determines the entity is qualified to receive rebates (LSA-R.S.51:2455(F)); and, it is only if the entity has complied with the provisions of the. LQJPA, that LBCI then may enter into a contract with that entity (LSA-R.S.51:2454(A)). ‘ .
*175 Although LBCI has approved Blake International’s application for LQJPA benefits, it is undisputed that no LQJPA contract has been executed in this case. We agree with the trial court that “contract negotiations are not a substitute for an executed and existing contract.” Thus, despite the reasons why the contract remains unexecuted, Blake International does not meet the definition of “employer” and cannot satisfy its evidentiary burden at trial on this issue. Further, without a LQJPA contract, Blake International also has no damages claim against LDED. Because we agree with the trial court that LDED has pointed out this absence of factual support for an element essential to Blake International’s rebate and damages claims, and Blake -International has failed to establish that it will be able to satisfy its evidentiary burden at trial, there is no genuine 17issue of material fact, and LDED is entitled to summary judgment on these claims. See LSA-C.C.P. art. 966(C)(2). The trial court’s February 25, 2014 judgment is affirmed.
DISMISSAL OF DECLARATORY JUDGMENT CLAIMS
After the trial court rendered the February 25, 2014 judgment,- Blake International filed its second amended petition, adding LBCI as a defendant, and seeking, in pertinent part, the following relief:
WHEREFORE, [Blake International] prays as follows:
2. That the Court order defendants to facilitate the execution of and execute a Quality Jobs contract with Blake International which is not prejudicial to Blake International’s claims in this lawsuit and which complies with the [LQJPA], including, but not limited to, incorporating by reference the vérsion of the Quality Jobs Rules in effect at the time Blake International filed its application; and containing no provisions which are not specifically authorized by or -not in compliance with the [LQJPA] or Rules in effect at the time Blake International filed its application;
3. That ... the Court enter judgment declaring that Blake International is entitled to the full rebates and benefits of the [LQJPA] with respect to all jobs created, including all jobs relating to hiring of former Pride employees[.]
In the August 2, 2014 judgment, the trial court granted summary judgment and dismissed Blake International’s above declaratory judgment claims against LDED and LBCI without prejudice. In its oral reasons for judgment, the trial court explained, as follows, that it did not have jurisdiction to order either defendant to enter a contract with. Blake-International:
I have no dispute amongst the parties that we don’t have a contract executed. That’s been stipulated to. And [Blake International] is asking this court, I guess by virtue of mandamus, to order [LBCI] not only to execute a contract with [Blake International] but, [to do so] ■ under the terms and conditions' favorable to [Blake International], under the prior version of the [LQJPA].
I have looked at the argument from both sides, and I don’t think that’s the role of this court. I can review an agen- ‘ cy determination or an adjudication under [LSA-R.S.] 49:964, ... [the Louisiana] Administrative Procedures Act[,] if there is a decision made, but I don’t think the court can be used to order the agency or the State to enter into a contract under terms favorable to one party. . I don’t know that I have the jurisdiction to do that....
I think the [LBCI], not the judiciary, is empowered to entér into the contract under the statute. I think that is. a matter for the executive branch as dele *176 gated to it by the legislature.. I can review it under the Administrative Procedures Act, but my review is limited under [LSA-R.S.] 49:964.
IsAnd based on the record before me, I really don’t see genuine issues of material fact, and I think that the movers, both [LDED and LB Cl] are entitled to • summary judgment. , •
On appeal, Blake International argues the trial court erred in concluding it did not have jurisdiction in this case.
 • The Louisiana Constitution vests the district courts with original jurisdiction over all “civil-and criminal matters,” except as otherwise authorized by the constitution, and with áppellate jurisdiction as provided by law. LSA-Const. art. V, § 16(A), (B).[6] A “civil matter” is one delegated in the'first instance to the judicial branch and over which district courts have historically exercised original jurisdiction, such as tort actions. See Wooley v. State Farm Fire and Casualty Insurance Company, 04-0882 (La.1/19/05), 893 So.2d 746, 764-65; Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713, 719. Stated differently, “civil matters” generally are considered to be those subject matters that have been traditionally adjudicated by district courts. Wooley v. AmCare Health Plans of Louisiana, Inc., 05-2025 (La.App. 1 Cir. 10/25/06), 944 So.2d 668, 676. But, it is simply not correct to say that everything an agency does must be subject .to the availability of judicial review to be valid. See Boeing Company v. Louisiana Department of Economic Development, 94-0971 (La.App. 1 Cir. 6/23/95), 657 So.2d 652, 657. For example, waste disposal and water discharge permitting by the Depart-: ment of Environmental Quality is not a civil matter within the meaning of LSA-Const. art. V, § 16(A), over which district courts exercise original jurisdiction. See Matter of American Waste & Pollution Control Company, 588 So.2d 367, 373 (La.1991); MEDX, Inc. v. Templet, 633 So.2d 311, 314 (La.App. 1 Cir.1993), writ denied, 635 So.2d 1137 (La.1994). And, the approval of insurance policy forms by the Commissioner of Insurance is likewise, not a civil matter. Woolly, 893 So.2d at 765.
lain this case, Blake International seeks a declaratory judgment requiring the defendants to execute a-LQJPA contract that incorporates the LQJPA rules in effect in 2009 when it filed its application. Specifically, in its second amended petition, Blake International alleges that: (1) during initial contract negotiations in June 2010, LDED attached a copy of the 2009/2010 LQJPA rules as an exhibit to the proposed contract; (2) after initial negotiations, LDED ceased responding to Blake International for approximately two years; (3) during its silence, LDED “was pushing substantial changes” to the LQJPA, which changes were approved by the legislature in 2011; (4) in late 2012, LDED sent Blake International a draft contract but removed the 2009/2010 rules as an exhibit; and (5) these and other efforts of LDED, LBCI, and/or the State “have frustrated Blake International’s ability to secure a Quality Jobs Program contract, thus preventing Blake from receiving the full benefits to which it is entitled.”
*177 Under LSA-R.S. 51:2454(A), the LBCI may enter into a contract with an employer who has complied with the provisions of the LQJPA. When used in a statute, the word “may” is permissive and denotes discretion. LSA-R.S. 1:3; see Matter of Marine Shale Processors, Inc., 566 So.2d 994, 997 (La.App. 1 Cir.), writ denied, 568 So.2d 1055 (La.1990). Thus, LBCI has discretion to enter into a LQJPA contract. The judiciary has not historically involved itself in discretionary contract negotiations between the executive branch and private entities; that is, such contract negotiations are not a matter delegated in the first instance to the judiciary. Wooley, 893 So.2d at 765. The separation of powers doctrine forbids courts from interfering with or controlling administrative officers or bodies in the exercise of any administrative authority or duty that involves the exercise of judgment and discretion. 73 C. J.S. Public Administrative Law and Procedure § 91, Discretionary Acts (database updated' June 2015).
Thus, we conclude that contract negotiations such as those at issue dp not constitute a “civil matter” over which district courts exercise original jurisdiction. The trial court correctly determined that it did not have jurisdiction to order LDED and LBCI to enter into a contract with Blake International under a specific version of the LQJPA rules. Because the trial court lacked subject matter jurisdiction, this court also lacks subject matter jurisdiction to consider the appeal from the August 2, 2014 judgment. 11()See Louisiana Environmental Action Network v. Louisiana Department - of Environmental Quality, 11-1935 (La.App. 1 Cir. 7/25/12), 97 So.3d 1148, 1154, writ denied, 12-1926 (La.11/9/12), 100 So.3d 842.
CONCLUSION
For the above reasons, the trial court’s February 25, 2014 judgment is affirmed. Further, the appeal from the August 12, 2014 judgment is dismissed. Costs of this appeal are assessed to Blake International U.S.A. Rigs, L.L.C.
FEBRUARY 25, 2014 JUDGMENT AFFIRMED; APPEAL FROM AUGUST 12, 2014 JUDGMENT DISMISSED.
McCLENDON, J,,concurs in part and dissents in part.

. LDED is a statutorily created entity which is advised by LBCI. See LSA-R.S. 51:923(A). LBCI exercises the powers delegated to it by LSA-Const. article VII, § 21(F). Id. Under this constitutional' provision, LBCI, with the approval of the governor, may enter into contracts for the exemption from ad valprem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as LBCI, with the approval of the governor, deems in the best interest of the state. Id.

. According to Mr. Favaloro and Mr. Steven Grissom, a LBCI board member, LQJPA contract negotiations are handled by LDED.

. In brief, LDED and LBCI argue that the LBCI did not agree to the version of the ¡contract filed into the record by Blake International.

. ’ Under the LQJPA, a “new direct job” is one where the employee: (1) works at a statutorily-deñned average hours per week; (2) was not previously on an employer’s payroll in Louisiana, nor on the payroll of its parent entity, subsidiary, or affiliate in Louisiana; nor (3) was previously on the payroll of any business whose physical plant and employees are substantially the ■ same as those of the employer in Louisiana; and (4) is an individual domiciled in Louisiana. LSA-R.S. 51:2453(4). Further, the “new direct job” must not have existed in Louisiana prior to the effective date the employer filed the application with LDED and shall not mean any employees who were retained following the employer’s acquisition of all or part of an instate business. Id.

. The actual text of LSA-R.S. 51:2453(2) defines "employer” as "a legal person who executes a contract with, the department....” However, the term “department” is not defined in the definitions section of the LQJPA, and LSA-R.S. 51:2454(A)'specifically indicates that it is the LBCI that enters into contracts with “employers” complying with the LQJPA.

. Although not at issue here, district courts have appellate jurisdiction to review administrative "decisions” only as provided by .the legislature or constitution. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 01-0185 (La.10/16/01), 797 So.2d 656, 660; also see Willows v. State Department of Health & Hospitals, 08-2357 (La.5/5/09), 15 So.3d 56, 60. These type of "decisions” do not refer to any decision made by an agency, at any point, in any proceeding; rather, these "decisions” generally are final decisions in an adjudication proceeding. See Metro Riverboat Associates, Inc., 797 So.2d at 661-62; also see LSA-R.S. 49:964(A)(1).