FREDERICKS HOMBERG WICKER, Judge.
| ¡JDefendants-appellants, Schiro Brothers Shoe Store, Inc., and United Fire and Indemnity Company, appeal the trial court’s granting of summary judgment in favor of defendants-appellees, Told, LLC d/b/a School Time Uniforms and/or School Apparel, Inc., and its insurer Travelers Property Casualty Insurance Company. For the following reasons, we affirm.

PROCEDURAL AND FACTUAL HISTORY

On June 7, 2013, plaintiff, Cindy Vail, filed a petition for damages in the Twenty-Fourth Judicial District Court naming as defendants, Schiro Brothers Shoe Store, Inc., its insurer, United Fire and Indemnity Company (hereinafter referred to collectively as “Schiro”), Told, LLC d/b/a School Time Uniforms and/or School Apparel, Inc., and its insurer Travelers Property Casualty Insurance Company (hereinafter referred to collectively as “Told, LLC”). In her petition, plaintiff alleged that on or about July 14, 2012, she was a customer at the “Schiro Brothers” retail store located at 4948 West Esplanade Avenue in Metairie, Louisiana. Plaintiff further alleged that as she was leaving the store and returning to her vehicle she tripped over a yellow parking barrier in the parking lot and sustained Rserious injuries and damages. Subsequent pleadings clarified that plaintiffs injury resulted from tripping over a yellow step placed in the parking lot adjacent to the sidewalk in front of the Schiro store’s entrance to facilitate pedestrian access between the parking lot and the sidewalk. Subsequent discovery revealed that Told, LLC was the lessee of the premises located at 4948 West Esplanade Avenue pursuant to a lease agreement with William Deris, a principal owner of Schiro Brothers Shoe Store, Inc. During his deposition, Mr. Deris testified that he purchased the property at 4948 West Esplanade Avenue in 1995 and operated a school uniform retail business called Schiro Shoes and Uniforms until selling the business to Told, LLC in 2011, at which time Mr. Deris entered into the lease agreement with Told, LLC and permitted Told, LLC to continue using the “Schiro Store” business name.
On October 28, 2014, Schiro filed a motion for summary judgment, asserting that the absence of any prior history of accidents related to the step showed that plaintiff would be unable to meet her burden of producing evidence that Schiro had actual' or constructive knowledge of the alleged defect, and that plaintiff had failed to produce any evidence to suggest that the step was unreasonably dangerous. Schiro argued that the absence of two essential elements of plaintiffs claim entitled them to summary judgment. On November 17, 2014, Told, LLC also filed a motion for summary judgment, wherein they adopted all of the arguments made by Schiro in their motion for summary judgment, and further asserted that Told, LLC was entitled to summary judgment because Mr. Deris, as lessor of the property, was responsible for the parking lot in which the accident occurred and thus plaintiff could not satisfy her burden of proving that Told, LLC had custody or control of the allegedly defective step, an essential element of her claim.
|4On December 3, 2014, the trial court heard both defendants’ motions for summary judgment and denied both motions in open court. In her written reasons for judgment, the trial judge reasoned that summary judgment in favor of the defendants would have required the trial court to weigh the credibility of the evidence presented by the defendants against that of the evidence presented by plaintiff, which is improper at summary judgment. *345 The trial judge further found that summary judgment was premature as' discovery had not been completed and a trial date had not been set.
. On August 11, 2015, after discovery was completed, Told, LLC filed a “Motion to Re-Urge Summary Judgment.” In their motion, Told, LLC argued that, inter alia, they were not liable for the allegedly defective step because they had custody of neither the step nor the parking lot where the step was located. In support of the motion, Told, LLC attached the lease agreement between Told, LLC and William Deris,' Mr. Deris’ deposition testimony, Told, LLC’s answers to interrogatories, and photographs of the accident area. Told, LLC pointed to several provisions in the lease agreement wherein the parties agreed that Mr. Deris would be responsible for repair and maintenance of the exterior of the property, including the parking lot, and that Told, LLC would not make any alterations to the premises without Mr. Deris’ consent. Told, LLC also pointed to portions of Mr. Deris’ deposition testimony wherein he testified that maintenance and repairs to the parking lot were his responsibility.
On September 17, 2015, Schiro filed a “Memorandum in Partial Opposition to Motion to Re-Urge Motion for Summary Judgment,” to which they attached the lease agreement, Mr. Deris’ deposition testimony, plaintiffs deposition testimony, plaintiffs answers to interrogatories, and photographs of the accident area. In their Memorandum in Partial Opposition, Schiro argued that other provisions of the Idease agreement demonstrated that Told, LLC had sufficient control over the parking lot to impose liability for the allegedly defective step. Specifically, Schiro pointed to a provision in the lease agreement which provided that Told, LLC was responsible for “the first Five Hundred Dollars ($500.00) of any repairs or damages to the building, plumbing, HVAC, electrical, fence or grounds!,]” and a clause obligating Told, LLC to “comply, so far as concerns the premises, with all health, hygienic, and other ordinances and laws now existing or to be enacted!.]” Schiro further asserted that Mr. Deris’ deposition testimony,- wherein he testified to his belief that Told, LLC would be liable for the accident because they were operating the business at the time it occurred, supported denial of Schiro’s motion for summary judgment. Lastly, Schiro.. argued that summary judgment was precluded by an “indemnification clause” within the lease agreement, whereby Told, LLC agreed to indemnify Schiro for any damage or injury arising from Told, LLC’s use of the property. ' .
On September 23, 2015, the trial court heard- Told, LLC’s Motion to Re-Urge Summary Judgment and granted the motion in open court, dismissing plaintiffs claims against Told, LLC. In her written reasons for judgment, the trial judge reasoned that there was no genuine issue as to Schiro’s custody of the allegedly defective step and Schiro’s responsibility to repair and maintain the parking lot in which the step was located, and therefore, because Told, LLC did not have custody of the thing alleged to have caused plaintiffs injuries, as is required to impose liability under La. C.C. art. 2317.1, Told, LLC was entitled to summary judgment.
On appeal, Schiro argues that the trial court erred in granting summary judgment in favor of Told, LLC, because the lease, agreement in place between William Deris and Told, LLC is ambiguous as to which- party- bears - responsibility |Bfor the specific area in which the accident occurred. Schiro also argues that in her reasons for judgment the trial judge cited erroneous facts and misinterpreted the év- *346 idence in granting Told, LLC’s motion for summary judgment.[1] Lastly, Schiro argues that the trial court erred in granting Told, -LLC’s motion for summary judgment, because the lease agreement obligated Told, LLC to indemnify Mr. Deris for any damage or injury to any person arising from the use of the premises by Told, LLC. Schiro’s timely appeal follows.

LAW AND ANALYSIS

Appellate courts review the granting of a summary judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Burns v. Sedgwick Claims Mgmt. Servs., 14-421 (La. App. 5 Cir. 11/25/14), 165 So.3d 147; Prime v. K-Mart Corp., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248; Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 547. A motion for summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine isspe as to material fact, and that mover is entitled to judgment as a matter of iaw.” , La. C.C.P. art. 966(B)(2).[2]
The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2); Trench v. Winn-Dixie Montgomery LLC, 14-152 (La.App. 5 Cir. 9/24/14), 150 So.3d 472. The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966(C)(2). However, if the movant will not bear [7the burden of proof at trial, the movant’s burden on a motion for summary judgment does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the claim. Id.-, Patrick v. Iberia Bank, 05-783 (La.App. 5 Cir. 3/14/06), 926 So.2d 632, 634. Thereafter, if the adverse party fails to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden at trial, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(C)(2).
Under Louisiana law, a party is responsible not only for the damage resulting from one’s own act but also for damage caused by things within one’s custody. ■ La. C.C. art. 2317. However, where damages are occasioned by the ruin, vice, or defect in a thing, the strict liability precept of La. C.C. art. -2317 is subject' to the following modification, under La. C.C. art. '2317.1:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
*347 ■Thus, to impose liability for an unreasonably dangerous defect, a plaintiff has the burden to show that the thing was in the defendant’s custody or control (“garde”), the thing had a vice or defect that presented an unreasonable risk of harm, the defendant knew or should have known of the unreasonable risk of harm, and the damage was caused by the defect. La. C.C. art, 2317.1; Wiltz v. Floor & Décor Outlets of Am., 15-516 (La.App. 5 Cir. 2/24/16), 186 So.3d 1204.
Under La C.C. arts. 2317 and 2317.1, liability arises out of a defendant’s legal relationship to the thing based on the defendant’s custody or control of the lathing, not solely ownership of the thing. Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, 1008. In cases involving a bifurcation of the ownership and possession of a defective thing, such as in the context of a lease, determining who has custody of a thing is a fact driven determination. Pamplin v. Bossier Parish Cmty. Coll., 38,533 (La.App. 2 Cir. 7/14/04), 878 So.2d 889, 893, writ denied, 09-2310 (La.1/14/05), 889 So.2d 266 (citing Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991)). “[I]n determining whether a thing is in.one’s custody or garde, courts should consider: (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing.” Dupree, 765 So.2d at 1009. Although it is presumed that an owner has custody or control of its property, this presumption is rebuttable. Davis v. Riverside Court Condo, Ass’n Phase II, Inc., 14-23 (La.App. 4 Cir. 11/12/14), 154 So.3d 643, 648. Ultimately, “[t]he person who has custody or garde of a thing is he -who has the legal duty to prevent its vice or defect .from harming another.” Dupree, 765 So.2d at 1009.
In this case,- the lease agreement and Mr. Deris’ deposition testimony provide sufficient evidence to demonstrate that Mr. Deris, rather than Told, LLC, had custody or control over the allegedly defective step.
Section six of the lease agreement provides: “Lessor agrees that it will be responsible, at its own expense, for repair and maintenance of the exterior of the Premises,- including parking lots (emphasis added). Section eight of the lease agreement prohibits Told, LLC from using the sidewalk adjacent to the parking lot for “any other purpose than ingress or egress' to . and from the Premises,” and further restrains Told, LLC from making any “alterations, additions or improvements ... to the Premises without the consent of Lessor.” In section eleven of the lease agreement, requiring Told, LLC to maintain insurance against |9“fire, flood, lightning, vandalism, malicious mischief, and other risks,” “parking areas” are explicitly excluded from Told, LLC’s . insurance coverage requirements. Lastly, in his deposition'testimony, Mr. Deris testified that he typically visited the property once a week in order to conduct- a casual inspection of the property. Mr. Deris further testified that when the parking; lot starts showing signs of wear'and tear, he, rather than Told, LLC, repairs it, and, pursuant to that duty, he had the parking lot, including the step, repainted in 2012.
-Upon review of the foregoing evidence, admitted' for purposes of the summary judgment,we find that William Deris, rather' than Told, LLC, retained control and custody of the exterior of the leased premises, including the allegedly defective step. By obligating Mr. Deris to repair and maintain the parking lot while simultaneously prohibiting Told, LLC from making any alterations, additions, or improvements to the leased premises or from making use of the sidewalks for any pur *348 pose other than access to and from the store, the lease agreement granted Mr. Deris the exclusive right to repair and maintain the parking lot in which the step was located and imposed a reciprocal duty on Mr. Deris to prevent any vice or defect in the parking lot from harming another therein.
We find no merit in Schiro’s arguments that Told, LLC had custody or control of the step. The second sentence of the maintenance provision of the lease agreement, placing financial responsibility upon Told, LLC for the “first Five Hundred Dollars ($500.00) of any repairs or damages to the building, plumbing, HVAC, electrical, fence or grounds,” cannot be read in a vacuum. This clause modifies the first sentence of the lease agreement’s maintenance section, wherein Mr. Deris agreed to be responsible, at his own expense, for “repair and maintenance of the exterior of the Premises.” We find that the subsequent sentence obligating Told, LLC to pay for the first five hundred dollars of any [ ^repairs merely granted Mr. Deris the right to demand reimbursement for expenses incurred in maintaining or repairing the exterior of the premises, rather than shifting the responsibility to perform such maintenance or repairs to Told, LLC.
We find similarly unpersuasive Schiro’s argument that Told, LLC had custody or control of the parking lot pursuant to a provision of the lease requiring Told, LLC to “comply, so far as concerns the Premises, with all health, hygienic, and other ordinances and laws now existing or to be enacted.” Pursuant to the lease agreement and Mr. Deris’ testimony, it was Mr. Deris’ responsibility to perform any maintenance or repairs in the parking lot, which might be necessary to comply with any ordinances or laws, and furthermore, Told, LLC was prohibited under the lease agreement from making any alterations without Mr. Deris’ consent. Therefore, we do not find that the provision of the lease agreement, imposing upon Told, LLC an axiomatic duty to comply with the law, carried with it an additional right of control or custody over the exterior of the property.
Lastly, Mr. Deris’ deposition testimony reflecting his belief that Told, LLC would bear liability for the accident because “they were operating the business at the time” of the accident does little to forestall our conclusion. The determination of who has custody or control of a thing is an objective fact driven determination, and Mr. Deris’ own subjective beliefs, stated in hindsight, do not alter the analysis. Moreover, Mr. Deris’ own testimony undermines the logic of his assumption. Given his statements regarding his own actions of inspecting the exterior of the property and performing maintenance in the parking lot, it is clear that Mr. Deris understood that he bore responsibility for maintaining the exterior of the premises and curing any defects therein. Thus, Mr. Deris’ retrospective testimony that he believed Told, LLC was responsible for the accident because they operated a business inside of the building on the premises, despite his own recognition that he | nwas responsible for the condition of the exteri- or of the premises where the accident occurred, fails to alter our conclusion that Mr, Deris had custody or control of the parking lot and the allegedly defective step.
In their final assignment of error, Schiro contends that the trial court erred in granting summary judgment in favor of Told, LLC, because the lease agreement contains an indemnification clause wherein Told, LLC agreed to “hold Lessor ... harmless from and on account of any damage or injury to any person or to the *349 property of any person arising from the use of the Premises by Lessee.” Sehiro argues that Told, LLC’s contractual duty to defend, indemnify, and hold Sehiro harmless from any potential award of damages to Ms. Vail will not arise until conclusion of the lawsuit, and thus dismissal of Told, LLC at this stage of the litigation is improper.
Though the lease agreement obligates Told, LLC to indemnify Sehiro for damages occasioned by Told, LLC’s use of the premises, the indemnity provision also qualifies the extent of the indemnification required by Told, LLC, providing that “this indemnification shall not cover any damages or injury arising from Lessor’s negligence or willful misconduct.” Having previously concluded that any potential liability for the accident in this cases rests with Sehiro, as the party with custody or control over the allegedly defective thing which caused the accident, we find that, should Ms. Vail recover any damages for her injuries, Told, LLC would not be obligated to indemnify Sehiro or Mr. Deris, because any award of damages would necessarily arise from Mr. Deris’ negligence, rather than Told, LLC’s use of the premises. Accordingly, we find no merit in this assignment of error.

CONCLUSION

Upon our de novo review of the parties’ pleadings and the evidence admitted for purposes of the motion for summary judgment, we find that Told, LLC | ^successfully pointed out an absence of factual support that Told, LLC had custody or control over the allegedly defective step which caused plaintiffs injuries, which is an essential element of plaintiffs claim against Told, LLC. We farther find that, in response to Told, LLC’s motion for summary judgment, neither plaintiff nor Sehiro produced sufficient factual support to show a genuine issue as to whether Told, LLC had custody or control over the step. Therefore, we find that Told, LLC was entitled to summary judgment in its favor as a matter of law. Accordingly, we affirm the trial court’s grant of summary judgment in favor of Told, LLC.

AFFIRMED

. In this assignment of error, Schiro solely complains of the trial judge’s written reasons for judgment. It is well-settled that a trial court’s oral or written reasons for judgment form no part of the judgment and that appellate courts review judgments, not reasons for judgment. Claiborne Med. Corp. v. Siddiqui, 12-759 (La.App. 5 Cir. 02/28/13), 113 So.3d 1109, 1112. Therefore, we do not address this assignment of error.

. The summary judgment hearing in this case was held on September 23, 2015. Accordingly, we apply the version of La. C.C.P. art, 966 in effect at that time.